IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN GUENTHER, SPECIAL
ADMINSTRATOR OF THE ESTATE
OF SEMMIE JOHN GUENTHER                                              PLAINTIFF

v.                      Case No. 5:15-cv-05192

GRIFFIN CONSTRUCTION COMPANY, INC.;
and GRIFFIN PROPERTIES OF FORT SMITH, LLC                            DEFENDANTS

### BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants, Griffin Construction Company and Griffin Properties of Fort Smith, LLC (collectively, "Griffin"),[1] by and through their counsel, Kutak Rock LLP, for their Brief in Support of their Motion to Dismiss, state:

### I. Introduction

The Estate of Semmie John Guenther claims that Griffin terminated John Guenther's employment on account of an alleged disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.*, and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.*  The Estate seeks back pay, compensatory damages, punitive damages, liquidated damages, attorney's fees and expenses, as well as injunctive relief.  These claims, however, did not survive the death of Mr. Guenther.  Accordingly, the Estate's claims must be dismissed. Fed. R. Civ. P. 12(b)(6), 12(c).

---

[1] Though the defendants bring this motion in the collective, they continue to assert that they are separate entities that cannot be held jointly and severally liable to the plaintiff.  Griffin Construction Company has admitted that it employed John Guenther.  Griffin Properties of Fort Smith, LLC continues to deny that it employed John Guenther at any time.

## II.  Factual Background[2]

John Guenther was employed by Griffin Construction Company as a Project Superintendent from September 2009 through July 2013.  Mr. Guenther was diagnosed with prostate cancer in or around May 2012, though his health improved over time and he was able to work.  In July 2013, while overseeing the remodel of a nursing home in El Dorado, Arkansas, Mr. Guenther's health began to decline.  On July 22, 2013, he notified his employer that he was in the hospital and was not going to be able to return to work.  Mr. Guenther's employment terminated on July 29, 2013.  He died May 29, 2014.  The Estate alleges that Mr. Guenther's employment was terminated in violation of the American's with Disabilities Act and the Arkansas Civil Rights Act.

## III.  Law and Argument

**A.     The ADA Claim Did Not Survive Mr. Guenther's Death And Should Be Dismissed.**

Courts have admittedly split on the central issue raised by this motion—whether a claim under the ADA survives the injured party's death.  *See Hanson v. Atl. Research Corp.*, Case No. 4:02-cv-301, 2003 WL 430484 (E.D. Ark. Feb. 14, 2003) ("When faced with the question of survivability of an ADA claim, the courts have confusingly split."); *Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200, 1232-33 (D.N.M. 2013) (identifying split in authority regarding the survivability of ADA claims).  On the one hand are cases that look to state survival statutes as the "federal rule of decision" to fill gaps in federal law.  *Id*.  On the other hand are

---

[2] Consistent with the standard of review, the factual background provided here assumes as true the facts alleged in the plaintiff's complaint.  This is for purposes of this motion only.  Griffin Construction Company and Griffin Properties of Fort Smith, LLC continue to deny the plaintiff's claims and reassert the admissions, denials, defenses, and explanations set forth in their Answer to the plaintiff's Complaint.

cases that apply "federal common law" principles to abate only those claims that are penal in nature. *Id*. The Eighth Circuit has yet to weigh in.

The better approach—and the one applied by a majority of the courts that have examined the issue—looks to state law regarding survival of claims to fill the gap created by the ADA's silence. Here, the application of Arkansas's survival statute results in the dismissal of the Estate's ADA claim. Ark. Code Ann. § 16-62-101(a).

### 1. *This Court should apply state law in deciding whether the ADA claim survives Mr. Guenther's death.*

"There is no general survival statute for federal question cases." *Kettner v. Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1126 (D. Minn. 2008) (*citing* 2 Cook & Sobieski, Civil Rights Actions ¶ 4.05, at 4–80). Thus, courts facing the abatement of a plaintiff's federal claim must first decide the proper source of law for deciding whether the claim survives. Some courts look to 42 U.S.C. § 1988(a), which states:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]

In short, this federal "borrowing" statute identifies a preference for applying state law, such as state survival statutes, where federal law is deficient. *Id*; *see e.g., Allred v. Solaray, Inc.,* 971 F. Supp. 1394, 1396 (D. Utah 1997); *Rosenblum v. Colorado Dep't of Health*, 878 F. Supp. 1404, 1408-09 (D. Colo. 1994); *United States v. Morvant*, 843 F. Supp. 1092, 1095 (E.D. La. 1994).

Other courts, however, reject the application of § 1988(a)—directly or by implication—because the text of the statute does not explicitly reference the ADA. Those courts instead follow the ancient common law maxim that "actions on penal statutes do not survive," while actions on remedial statutes do. *See e.g., Kettner*, 570 F. Supp. 2d at 1133 (*citing Ex parte Schreiber*, 110 U.S. 76, 80 (1884)); *Hanson v. Atlantic Research Corp.*, Case No. 4:04-cv-301, 2003 WL 430484 (E.D. Ark. Feb. 14, 2003) ("The list of cases to which Section 1988(a), by its very language, applies does not include ADA or Title VII cases."). Respectfully, this maxim no longer represents the modern-day federal approach and should be rejected.

Instead, this Court should adopt the modern majority position—that is, that federal courts must look to state law, including state survival statutes, to fill deficiencies in the ADA framework whether § 1988(a) applies or otherwise. *See Nordwall*, 960 F. Supp. 2d at 1236. As noted commentators and professors Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper have observed, "the Supreme Court has put increasing emphasis on the notion that when determining what should be the content of federal common law, the law of the forum state should be adopted absent some good reason to displace it." 19 Charles A. Write, Arthur R. Miller, Edward H. Cooper, *Fed. Practice and Procedure: Jurisdiction* § 4518, at 752-73 (2d ed. 1996) (*cited with approval by Nordwall*, 960 F. Supp. 2d at 1240). "Thus, in *Kamen v. Kemper Financial Services, Inc.*, the Supreme Court of the United States held that, in general, 'federal courts should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs.'" *Nordwall*, 960 F.Supp. at 1240-41 (*quoting Kamen*, 500 U.S. 90, 98 (1991)). In short, federal common law has changed and now looks to state law to fill deficiencies in federal statutes rather than relying on ancient maxims such as "actions on penal statutes do not survive."

Look no further than the application of state statutes of limitations to ADA claims as evidence of a shifting federal common law. **Despite no express statutory requirement mandating that federal courts look to state law,** the Eighth Circuit, along with every other Court of Appeals except the Fourth Circuit, now applies the most analogous state statute of limitations to claims under Title II and III of the ADA because federal law is silent. *See Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054 (8th Cir. 2003) (applying Nebraska's six-year statute of limitations to plaintiff's ADA claim); *see also*, *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409–10 (11th Cir.1998) (holding that Georgia's statute of limitations for personal injury actions should be applied to discrimination claims brought under the Rehabilitation Act and Title II of the ADA); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir.1996) (district court correctly applied Illinois' statute of limitations for personal injuries as the most analogous limitations period for plaintiff's Title III ADA claim); *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir.1993) ("Because a [Rehabilitation Act] section 504 claim is closely analogous to section 1983, we find that section 504 claims are best characterized as claims for personal injuries."); *Morse v. University of Vermont*, 973 F.2d 122, 127 (2d Cir.1992) ("[W]e now hold that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions."); *Hickey v. Irving Ind. School Dist.*, 976 F.2d 980, 983 (5th Cir. 1992) (magistrate correctly adopted Texas statute of limitations for personal injury actions as the limitations period applicable to plaintiff's Rehabilitation Act claim).

This was the premise of the Seventh Circuit's decision in *Hutchinson v. Spink*, 126 F.3d 895 (7th Cir. 1997), where the Court held, "whether by incorporation through federal common law or more directly (a question we need not resolve here), state law governs the survival of statutory civil rights actions like the ADA claim[.]" *Id*. at 898 (*citing Slade v. U.S. Postal Serv.*,

952 F.2d 357, 360 (10th Cir. 1991) (for Title VII purposes, federal common law incorporates state statute for survival of personal injury actions); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 875-76 (11th Cir. 1986) (declining to decide whether state law or federal common law applies to survival of Title VII action, because result was the same)). Following *Hutchinson*, with what is perhaps the most thorough analysis of the issue to date, the district court in *Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200 (D.N.M. 2013), held:

> Specifically, if current federal common law incorporates the applicable state law to determine the survivability of these federal causes of actions, because that is the result that § 1988(a)'s application produces in § 1983 civil-rights claims, **the result is the same even if § 1988(a) does not formally apply.** The Court thus concludes that, as long as it does not conflict with the Constitution and federal law, the Tenth Circuit incorporates the applicable state law to determine whether the Rehabilitation Act claim survives the claimant's death.

*Id.* at 1241.

This is the better rule of law and one that recognizes the existing preference for applying state law "as the federal rule of decision" in federal question cases. *Kamen*, 500 U.S. 90, 98 (1991). Again, the Eighth Circuit has already recognized as much by applying state statutes of limitations to ADA claims despite no statutory requirement that it do so. *Gaona*, 324 F.3d at 1054. As an extension of this principal and as a matter of modern federal common law, this Court should look to the applicable state survival statute to determine whether an ADA claim survives a claimant's death. *Nordwall*, 960 F. Supp. 2d 1200.

> 2. *Applying Arkansas law, the ADA claim does not survive Mr. Guenther's death.*

Arkansas's survival statute states:

> For wrongs done to the person or property of another, an action may be maintained against a wrongdoer, and the action may be brought by the person injured or, after his or her death, by his or her executor or administrator against the wrongdoer or, after the death of the wrongdoer against the executor or administrator of the wrongdoer, in the same manner and with like effect in all respects as actions founded on contracts.

6

Ark. Code Ann. § 16-62-101(a). The Arkansas Supreme Court has interpreted this statute narrowly. As the Court originally stated in *Ward v. Blackwood*, 41 Ark. 295 (1883), "[t]he language of the statute includes every action, the substantial character of which is bodily injury, or damage of a physical character, but does not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution." *Id*. at 298. Thirty years after *Ward*, the Arkansas Supreme Court reiterated this interpretation in *Ark. Life Ins. Co. v. Am. Nat. Life Ins. Co.*, 110 Ark. 130, 161 S.W. 136 (1913), holding, "[t]he statute means injuries of a physical character to actual, visible, and tangible property, and not to property rights or interests which in their nature are invisible and intangible." *Id*. at 137, 161 S.W. at 138.

These same interpretations have been upheld and cited with approval by both the Eighth Circuit and the Arkansas Supreme Court in more recent years. In *Parkerson v. Carrouth*, 782 F.2d 1449 (8th Cir. 1986), the Eight Circuit cited *Ward* and *Arkansas Life* with approval in ruling that a plaintiff's § 1983 civil rights action did not survive the claimant's death because the claims at issue sought recovery for "property rights or interests which in their nature are invisible and intangible" and which claims affected "only the feelings or reputation." *Id*. at 1452. Likewise, in *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548 (2012), the Arkansas Supreme Court affirmed the holdings of *Ward* and *Arkansas Life*, concluding that a claim for invasion of privacy did not survive the injured party's death because the claim did not seek recovery for "bodily injury" or "damage of a physical character." *Id*. at *5-8, 423 S.W.3d at 551-53.

Applying this precedent here, the Estate's ADA claim does not survive Mr. Guenther's death under Arkansas law. The Estate's ADA claim is premised not on "bodily injury" or "damage of a physical character," but is instead premised entirely on "property rights or interests

7

which in their nature are invisible and intangible" or which affect "only the feelings or reputation." Following the Arkansas Supreme Court's guidance in *Ward*, *Arkansas Life*, and *Cannady*, along with the Eight Circuit's interpretation of Arkansas law in *Parkerson*, this Court should dismiss the Estate's ADA claim as it did not survive Mr. Guenther's death.

> 3. *In the alternative, if the Estate's ADA claim survives Mr. Guenther's death, the Estate may not recover punitive or liquidated damages.*

Should this Court hold that Arkansas law does not apply and the Estate's ADA claim survives Mr. Guenther's death, the Court should still dismiss all claims that are penal in nature. *See Hanson,* 2003 WL 430484, at *4. Applying the position adopted by the Court in *Hanson*, claims for liquidated or punitive damages are simply not available under the ADA following the claimant's death. *Id*.; *see also Kettner,* 570 F. Supp. 2d 1121 (declining to apply state survival statute to ADA claim but limiting plaintiff's recovery to non-penal, compensatory damages). Thus, should the Court allow the Estate's ADA claim to proceed, it should limit the Estate's recovery to compensatory damages only and dismiss all claims for liquidated or punitive damages.

**B.    The ACRA Claim Does Not Survive Mr. Guenther's Death And Must Be Dismissed.**

For the same reasons noted above with respect to the Estate's ADA claim, the Estate's ACRA claim should likewise be dismissed. Courts "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]." *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, n. 1 (8th Cir. 2007) (bracketed language in original) (*quoting Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000) (stating that because so few ACRA cases have been decided by Arkansas courts, federal law interpreting equivalent discrimination claims are used to aid in analysis). Because the Estate's ACRA claim is premised not on "bodily

8

injury" or "damage of a physical character," but is instead premised entirely on "property rights or interests which in their nature are invisible and intangible" or which affect "only the feelings or reputation," the claim does not survive the claimant's death. *Ward*, 41 Ark. 295; *Ark. Life Ins. Co.*, 110 Ark. 130, 161 S.W. 136; *Parkerson*, 782 F.2d 1449; *Cannady*, 2012 Ark. 369, 423 S.W.3d 548. Accordingly, the ACRA claim should be dismissed.

### IV. Conclusion

This Court should look to Arkansas's survival statute when deciding whether the Estate's ADA and ACRA claims survive Mr. Guenther's death. Under Arkansas law, the Estate's ADA and ACRA claims did not survive and should be dismissed. As such, the defendants request that the Court grant their motion and dismiss the Estate's claims with prejudice.

Respectfully Submitted,

KUTAK ROCK LLP

/s/ Scott Jackson
Scott Jackson (AR Bar No. 2008195)
Samantha B. Leflar (AR Bar No. 2010190)
**KUTAK ROCK LLP**
234 East Millsap Road, Suite 200
Fayetteville, AR 72703-4099
Phone: 479.973.4200
Fax: 479.973.0007
Scott.Jackson@KutakRock.com
Samantha.Leflar@KutakRock.com

ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, and will send notification of such filing to the following:

George M. Rozzell IV  
224 S. 2nd St.  
Rogers, AR 72756  
grozzell@arkattorneys.com

this 29th day of October 2015.

                                                    /s/ Scott Jackson  
                                                    Scott Jackson