IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| JUSTIN GUENTHER, ) <br> SPECIAL ADMINISTRATOR OF THE ) <br> ESTATE OF SEMMIE JOHN GUENTHER, ) <br> Deceased ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> GRIFFIN CONSTRUCTION ) <br> COMPANY, INC. ) <br> ) <br> Defendant. ) | Case No. CV-5:15-cv-05192 |

**PLAINTIFF'S RESPONSE IN OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Justin Guenther, Special Administrator of the Estate of Semmie John Guenther ("Mr. Guenther"), comes before this Court to state his opposition of Defendant's Motion to Dismiss, and offers the following in support:

**I.   Introduction**

The Plaintiff brought this action to remedy disability discrimination in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. §12111, *et seq.* ("ADA"), and the Arkansas Civil Rights Act of 1993, A.C.A. 16-123-101, *et. seq.* ("ACRA"), against Griffin Construction Company, Inc. ("Griffin Construction"); and for a permanent injunction prohibiting the Defendants from engaging in practices and policies alleged in the Complaint.  Plaintiff seeks full back pay for time missed as a result of Defendant's discriminatory actions, as well as benefits, front pay, compensatory and punitive damages, liquidated damages, prejudgment and post-judgment interest, reasonable attorney's fees and expenses, and any and all other relief to which he is entitled as the victim of discrimination predicated upon disability.  These claims survive Mr. Guenther's death

pursuant to federal common law as applied to the ADA claim and under the Arkansas Survival Statutes as applied to the ACRA claim.

## II. Factual Background

Semmie John Guenther ("John") was employed by Defendant, Griffin Construction, as a Project Superintendent from September 2009 until July 31, 2013. In the spring of 2012, John was diagnosed with prostate cancer. At that time, he requested, and was granted, roughly three weeks leave from his job in Texas to which no one objected. In 2013, after successful treatment, John returned to Griffin Construction to manage a project in El Dorado, Arkansas. John learned around that time that he had cancer throughout his body, primarily in his lungs and chest cavity. Notwithstanding his diagnosis, he withheld treatment while managing his job for Griffin Construction. The conditions continued to worsen over the summer of 2013, and at one-point John had an episode where he was unable to swallow. John notified his employer on July 22, 2013 that he was going to have radiation for about three weeks. He and his Doctor notified the employer that he would be able to return to work on August 20, 2013 by virtue of a return to work slip. The next day, on July 31, 2013, Griffin Construction confirmed his termination. He was told he could keep his insurance for at least another month. It was learned upon his termination that the insurance was already cancelled, and the company did not have to offer COBRA continuation. Griffin Construction also cancelled the life insurance policy connected to John's employment. As a result of his termination, loss of wages, and loss of benefits, Mr. Guenther suffered anxiety and emotional distress. His condition declined, and he died on May 29, 2014. After pursuing the mandatory administrative remedies, his estate brought this action for violations of the Americans with Disabilities Act and the Arkansas Civil Rights Act.

### III. Legal Argument

### A. The Americans with Disabilities Act ("ADA") Claim Survives Mr. Guenther's Death and Should Not Be Dismissed.

The Defendant notes a split of authority on the applicability of federal common law to ADA claims. Importantly, among the Eighth Circuit District Courts, no confusion exists. When faced with the issue, the Districts of the Eighth Circuit uniformly apply federal common law to the survival of ADA claims. *See, e.g., Kettner v. Compass Group USA, Inc.*, 570 F. Supp. 2d 1121 (D. Minn. 2008); *A.H. v. St. Louis Cnty.*, Case No. 4:14-cv-2069 (E.D. Mo. July 17, 2015); *Estate of Stoick ex rel. Spry v.* McCorvey, Civil No. 10-1030 (D. Minn. July 29, 2011); *Hanson v. Atl. Research Corp.,* Case No. 4:02-cv-301 (E.D. Ark. Feb. 14, 2003).

The Defendant relies on language from *Hanson*, where the Eastern District of Arkansas Court noted the confusion among the circuits as to whether the survival of an ADA claim hinges on an application of § 1988(a) of Title 42. Although *Hanson* recognizes the split of authority on the issue, it clearly and rationally holds that the line of cases applying § 1988(a) to ADA claims are "erroneous." *Hanson*, [Doc.. 8], at 9. The Defendant fails to identify that language in its Motion to Dismiss, and instead readily adopts the reasoning of the confused and erroneous cases in support of its argument.

#### *1. Section 1988(a) of Title 42 does not apply to claims arising under ADA.*

The Defendant suggests that this Court should, pursuant to 42 U.S.C. § 1988(a), borrow Arkansas's Tort Survival Statute (Ark. Code Ann. § 16-62-101) and apply it to the Plaintiff's ADA claim, which would, according to the Defendant, result in the necessary dismissal of this case.

42 U.S.C. § 1988(a), states:

*The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the*

> *protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]*

The application of § 1988(a) to claims arising under the ADA is an unintended and overreaching expansion of the statute. The majority of the courts applying § 1988(a) and state survival statutes to ADA actions do not support their conclusions "with any persuasive analysis – or in fact any analysis at all – of the statutory language." *Flaum v. Gloucester Lanes, Inc.*, No. 4:13-CV-131 (E.D. Va. Jan. 27, 2015).

The general rule is that a court's analysis must begin with the statute's plain language. *North Dakota v. United States*, 460 U.S. 300, 312-13 (1983). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). If there is no ambiguity in the plain meaning of the language of the statute, the inquiry ends and "the courts [are] to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). "If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent." *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004).

Section 1988(a) by its express language does not apply to ADA cases. *Hanson*, at 3. Section 1988(a) reads, in pertinent part: "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of *titles 13, 24, and 70* of the Revised Statutes for the protection of all persons in the United States in their civil rights…" 42 U.S.C. §1988(a) (emphasis added). The statute explicitly confines its application to "certain core civil rights provisions—essentially the Reconstruction Era Civil Rights Acts—and has never been extended to actions under the ADA…, which while plausible labeled 'civil rights'

4

legislation in the broad general sense, [is] more precisely labeled employment discrimination legislation." *Kettner*, 570 F. Supp. at 1128. "The fact that Section 1988(a) is confined to only certain civil rights actions—essentially its historical companions such as Section 1983 and Section 1981 actions—cannot be discounted as mere legislative oversight in failing to update Section 1988 in the wake of the enactment of new federal statutes such as the ADEA, ADA, and Rehabilitation Act." *Id.* at 1130. Congress has expanded 42 U.S.C. § 1988 on at least three separate occasions (1993, 1994, and 2000) since the enactment of ADA in 1990, "but has not expanded the language of subsection (a) to bring additional statutes within its reach." *Green v. City of Welch*, 467 F. Supp. 2d. 656, 665 (S.D. W. Va. 2006). It stands to reason that the legislature did not intend § 1988(a) to expand to employment discrimination legislation, namely the ADA and Title VII; otherwise the changes would have been made during the previous amendments to the statute.

Some of the courts applying § 1988(a) to ADA and Title VII claims have done so through a "misplaced reliance" on the *Robertson v. Wegmann* opinion. *See* 436 U.S. 584 (1978); *Hanson*, at 9. However, the *Robertson* opinion applied a state survival statute to a § 1983 claim, which is specifically covered by the plain language of § 1988(a). *Id.* at 597. The Court, concerned that their holding may preclude an entire class of federal claims, stated that the "holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions." *Robertson*, 436 U.S. at 594. The Supreme Court, after the *Robertson* opinion, recognized the distinction in civil rights actions and "expressly noted that Section 1988(a) does not apply to *all* civil rights actions." *Kettner*, 570 F. Supp. at 1128. (citing *Carlson v. Green*, 446 U.S. 14, 23-24 (1980)) (emphasis added).

There is an Eighth Circuit opinion, *Parkerson v. Carrouth*, 782 F.2d 1449 (8th Cir. 1986) that speaks in terms of Section 1988(a) governing "questions of survival of federal civil rights actions," but this "shorthand phrasing—entirely apt for Section 1983, 1985, and

5

1986 claims—cannot be read as holding that Section 1988(a) applied beyond its stated terms to any and [all] claims that generally concern civil rights in the broadest sense." *Kettner*, 570 F. Supp. 2d at 1128, n. 8.  In line with the districts of the Eighth Circuit, Section 1988(a) is to be analyzed by its plain meaning, which does not encompass the Americans with Disabilities Act. The survival of the claim for employment discrimination under the Americans with Disabilities Act should not be determined through application of 42 U.S.C. § 1988(a).

### 2. This Court should apply federal common law in deciding the survivability of an ADA claim.

The Districts of the Eight Circuit determine survival of ADA claims through federal common law.  *See e,g., Kettner*, 570 F. Supp. at 1132; *Hanson, supra.*.  In following federal common law, claims that are not penal in nature are permitted to survive the death of the aggrieved party, but those that are penal in nature do not. *Schreiber v. Sharpless*, 110 U.S. 76 (1884); *Kettner*, 570 F. Supp. 2d at 1132.  With respect to survival statutes, under the common law, only actions for penalties or forfeitures do not survive. *Kettner*, 570 F. Supp. 2d at 1133.  "A remedial statute, in contrast to a penal statute, is generally one which redresses individual wrongs and under which recovery runs directly to the individual." *A.H.*, at 8.  ADA claims have been found to be remedial in nature, and therefore survive under the federal common law.  *Kettner*, 570 F. Supp. 2d at 1134 (citing *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y 1996)).

Defendant requests this Court ignore federal common law and adopt state law to fill deficiencies in the ADA framework.  The Defendant's argument is based on a misguided comparison of decisions regarding statute of limitations and those considering survival statutes.[1]  The analogy is lacking, as there is existing federal common law for survival

---

[1] The Arkansas Supreme Court recognized the difference between a statute of limitations and remedial statutes, such as survival statutes.  "Statute of limitations are to be distinguished from statutes which create a right of action not existing at common law and

6

statutes, but there is no federal common law for statutes of limitations.[2]  *Kettner*, 570 F. Supp. 2d at 1132, n13.

This Court should follow the Districts of the Eighth Circuit and apply federal common law to the ADA claim.  To treat federal common law as an "ancient maxim," as suggested by Defendant, is an arrogant degradation of federal precedent and an unwarranted disregard for congressional intent.

### 3. The Arkansas Tort Survival Statute, Arkansas Code Annotated §16-62-101 does not apply to the ADA or the ACRA claims because they are not tort claims.

Even assuming this Court should look to Arkansas's survival statute, the ADA claim survives because an employment discrimination claim under the ADA is not a pure tort claim. "The Arkansas survival statute, Ark. Code Ann. § 16-62-101 (1987) provides that a personal representative may bring a *tort* action on behalf of the decedent in the following instance…" *McDonald v. Pettus*, 988 S.W.2d 9, 16 (Ark. 1999) (emphasis added).  The Tort Survival Statute does not apply to contract claims.  *Id.*

The claims brought under the ADA and ACRA are statutory causes of action.  They cannot be referred to as simply a tort or a contract claim, as they are causes of action akin to both. See *Gallagher v. Wilton Enterprises, Inc.* 962 F.2d 120 (1st Cir 1992); *Dalis v. Buyer Advertising*, 418 Mass. 220 (1994); *Beesley v. Hartford Fire Ins. Co.*, 723 F. Supp. 635, 652 (N.D. Ala. 1989). In the first instance, employment discrimination is similar to a tort as the damages include emotional distress and mental anguish.  Defendant argues the Plaintiff's request for damages based on emotional distress and mental anguish are not "physical injury." However, that narrow proposition is not supported by Arkansas case law.

---

restrict the time within which action may be brought to enforce a right."  *Gomez v. ITT Educ. Servs.*, 71 S.W.3d 542, 545 (Ark. 2002).

[2] The enactment of the residual federal statute of limitations in 1990 applies only to actions under federal statutes enacted after December 1, 1990.

Emotional distress and mental anguish have not been found by this Court nor an Arkansas court to not be "physical injury." As explained below, the more logical position is that "physical injury" encompasses emotional distress and anxiety.

Moreover, an employment discrimination claim, coupled with prayers for lost wages, is akin to a contract claim in that there was a breach of contract by wrongful discharge. See *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1524 (11th Cir 1991); *Pons v. Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977); *Cheverly v. Western Electric Co.,* 69 F.R.D. 348, 350 (W.D. Mo. 1975) (analyzing an award of back pay for Seventh Amendment purposes).

An ADA claim can be likened to both a tort and contract claim; therefore, the law that should apply is the Arkansas Probate code, which references the survival of tort, contract, and property recovery claims. See *McDonald*, 988 S.W.2d at 16. This type of discrimination claim is one that would continue "to exist beyond the decedent's death under common law, and does not depend upon the survival statute for its continued existence." *Id.* "From the plain language of [Section 28-49-104] of the probate code and our supporting case law, it is clear that a representative, administrator, or executor of an estate may bring a tort, contract, or property-recovery action after the decedent's death." *Id.*

The ADA claim is not specifically a tort nor contract claim and, having characteristics of both, should be analyzed for survival under the Probate code, Arkansas Code Annotated Section 28-49-104. The ADA claim survives under Ark. Code Ann. § 28-49-104.

    **4. Alternatively, if this Court finds the ADA claim is governed by the Arkansas Tort Survival Statute, the claim survives.**

Should this Court find employment discrimination claims more akin to tort actions, a discrimination claim should be viewed as damage to the person, similar to a personal injury or negligence claim, or viewed in the context of the relief requested.

Other states have recognized this proposition. For example, the Supreme Court of Massachusetts concluded that previous case law holding that "damage to the person"

meant "damage of a physical character" was not a correct statutory interpretation. *Harrison v. Loyal Protective Life Ins. Co.*, 379 Mass. 212 (1979). The Court decided that the "tort of intentional infliction of emotional distress (whether with or without physical injury) survived the death of the victim" due to the fact that the survival statute allowed for an assault action to survive. *Id.* The court reasoned that courts are able to decide tort suits (assault) involving mental and emotional damages; therefore cases of severe distress should also survive. *Id.*

Further, courts frequently liken the remedies for discrimination claims to personal injury claims, and then apply statutes directed at personal injury claims in the discrimination context. *See Goodman v. Lukens Steel Company*, 482 U.S. 656, 660 (1987); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998); *Soigner v. Am. Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996); *Hickey v. Irving Independent School District*, 976 F.2d 980 (5th Cir. 1992); *Slade v. United States Postal Service*, 952 F.2d 357 (10th Cir. 1991); *Wagner v. Tex. A & M Univ.*, 939 F. Supp. 1297, 1311 (S.D. Tex. 1996), *Doukas v. Metropolitan Life Insurance Company*, 882 F. Supp. 1197 (D.N.H. 1995).

Plaintiff requests this Court analyze the ADA and ARCA claims by the type of relief requested for purposes of survival. Plaintiff, as in a pure tort action, has requested damages including, but not limited to, compensatory damages for loss of income, loss of benefits, and damages for emotional distress and anxiety.

Further, this case is distinguished from all the previous cases interpreting the survival statute, which are referenced by Defendant. In *Ward v. Blackwood*, the Plaintiff brought an action for malicious prosecution. *Ward v. Blackwood*, 41 Ark. 295 (1883). *Arkansas Life* concerned allegations of slander, libel, malicious prosecution, and fraudulent conspiracy to injure and destroy a business. *Ark. Life Ins. Co. v. Am. Nat. Life Ins. Co.*, 110 Ark. 130 (1913). *Cannady* involved a claim for invasion of privacy and sought damages

9

for anguish suffered by the surviving family members. *Cannady v. St. Vincent Infirmary Med. Cir.*, 2012 Ark. 369 (2012). *Cannady* does not stand for the proposition that the decedent suffered personal damages before her untimely death. The damages from invasion of privacy were suffered by the estate after her death. The application of *Cannady* to our case would therefore be in error.

None of the cases cited above, including *Cannady* address damages of the nature requested in this case, which were suffered by Semmie Guenther. The instant case is brought, in part, for recovery of ascertainable lost wages and lost employee benefits, fundamentally property damages, as well as injury to the person of Semmie Guenther, mental anguish and emotional distress.

In the event this Court finds employment discrimination claims more akin to tort actions, a discrimination claim should be viewed as damage to the person, similar to a personal injury or negligence claim, or viewed in the context of relief requested. The instant claim is damage to the person in the form of emotional distress and the relief requested is, in part, ascertainable lost wages and lost benefits.

   5. **No matter whether the Arkansas Tort Survival Statute or the Arkansas Probate Code applicable to the pursuit of claims applies to the ACRA, the claim survives.**

Incorporating the argument from Section 3 wherein an ADA (or ACRA) claim can be likened to both a tort and contract claim, the availability of the estate's recourse that should apply to the ARCA claim is also the Arkansas Probate Code, which references the survival of tort, contract, and property recovery claims. See *McDonald*, 988 S.W.2d at 16. This type of discrimination claim is one that would continue "to exist beyond the decedent's death under common law, and does not depend upon the survival statute for its continued existence." *Id*. "From the plain language of [Section 28-49-104] of the probate code and our supporting case law, it is clear that a representative, administrator, or executor of an

estate may bring a tort, contract, or property-recovery action after the decedent's death." *Id*.

Alternatively, incorporating the argument in Section 4, wherein emotional distress in an employment discrimination case is damage to the person and the relief requested is more akin to a personal injury or negligence claim, the Court should find the emotional distress and mental anguish suffered by the Plaintiff to be injury to the person, and therefore survive under the Arkansas Tort Survival Statute.

### IV.     Conclusion

The Plaintiff requests this Court apply federal common law in deciding whether the Estate's ADA claim survives Mr. Guenther's death.  Under federal common law, the ADA claim is remedial in nature and therefore survives allowing the Plaintiff to recover compensatory damages.  The Plaintiff acknowledges that no prayer for punitive damages can be made for the ADA claim under federal common law.

The Plaintiff further requests this Court to apply the Probate Code survival statute to the Arkansas Civil Rights Act.  Under state probate law (and also, *in arguendo*, under the State Tort Survival Statute), the ACRA claim survives and Plaintiff should be able to recover punitive damages thereunder.  The Defendant's Motion to Dismiss should be denied.

Because of the nuanced nature of the issues presented herein, the Plaintiff requests oral argument of the Defendant's Motion to Dismiss.

        Respectfully Submitted,

        JUSTIN GUENTHER,
        SPECIAL ADMINISTRATOR OF THE
        ESTATE OF SEMMIE JOHN GUENTHER,
        Deceased
        **KEITH, MILLER, BUTLER,**
          **SCHNEIDER & PAWLIK, PLLC**
        224 South 2nd St.

Rogers, AR 72756  
Telephone: (479) 621-0006  
Telecopier: (479) 631-6890  


/s/George M. Rozzell IV  
George M. Rozzell IV (2008032)  
*Attorney for Justin Guenther, Special Administrator of the Estate of Semmie John Guenther, Deceased*

## CERTIFICATE OF SERVICE

    I, George Rozzell, do hereby certify that on this 12th day of November, 2015 I caused the foregoing pleading to be delivered to all parties of record through counsel.

/s/George M. Rozzell IV  
George M. Rozzell IV (2008032)