### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

JUSTIN GUENTHER, SPECIAL
ADMINSTRATOR OF THE ESTATE
OF SEMMIE JOHN GUENTHER                                                    PLAINTIFF

v.                                          Case No. 5:15-cv-05192

GRIFFIN CONSTRUCTION COMPANY, INC.                                        DEFENDANT

### REPLY IN SUPPORT OF MOTION TO DISMISS

The Estate paints Griffin's motion as an "arrogant degradation of federal precedent." (Doc. 16 at 7).  This is grossly inaccurate.  Having plainly identified the current split in authority, Griffin asks this Court to apply the rule adopted by a majority of Courts to have addressed this issue, including the Seventh, Tenth, and Eleventh Circuits, and look to state law to fill a gap that exists in the federal statutory framework.  Applying state law here, the Estate's claims against Griffin do not survive and should be dismissed with prejudice.

### I.  Law and Argument

A.      **Federal common law now looks to state law to fill deficiencies in federal statutes, including the deficiency created by the lack of a federal survival statute.**

The Estate redirects the Court to the language of § 1988(a), the federal "borrowing" statute, as conclusive evidence that state law has no role to play in this dispute because § 1988(a), by its plain language, does not apply to the ADA.  (Doc. 16 at 4-5).  According to the Estate, "[t]he application of § 1988(a) to claims arising under the ADA is an unintended and overreaching expansion of the statute."  (Doc. 16 at 4).  This misses the point of Griffin's argument entirely.  Griffin does not assert § 1988(a)'s plain language mandates application of state survival statutes in an ADA case.  To end the analysis there, however, would ignore decades of precedent that looks to § 1988(a) in a variety of civil rights actions, either explicitly

4814-3853-5211.1

or by simply following the spirit of the statute (i.e. a common law rule), to apply state rules of decision where federal law is deficient. *See, e.g., Hutchinson v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997) ("whether by incorporation through federal common law or more directly (a question we need not resolve here), state law governs the survival of statutory civil rights actions like the ADA claim[.]"); *Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (for Title VII purposes, federal common law incorporates state statute for survival of personal injury actions); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 875-76 (11th Cir. 1986) (declining to decide whether state law or federal common law applies to survival of Title VII action, because result was the same); *Grandbouche v. Clancy*, 825 F.2d 1463, 1465 (10th Cir. 1987) (*Bivens* action); *Scott v. University of Delaware*, 601 F.2d 76, 81-82 n. 8 (3rd Cir.) (same); *Beard v. Robinson*, 563 F.2d 331, 333 (7th Cir. 1977) (*Bivens* action) ("Faced with the absence of a governing federal rule of decision, most courts that have considered the question of the survival of federal civil rights claims have looked to state law, either on the authority of 42 U.S.C. § 1988 or simply because reference to state law obviated the need to fashion an independent federal common law rule.").

Here is the point—federal common law has changed. Whether because of § 1988(a) or otherwise, federal courts now look to state law to fill deficiencies in federal statutes in a variety of contexts. The survivability of an ADA claim should be no different. *See Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200 (D.N.M. 2013). As the trial court in *Nordwall* summarized:

> Specifically, if **current** federal common law incorporates the applicable state law to determine the survivability of these federal causes of actions, because that is the result that § 1988(a)'s application produces in § 1983 civil-rights claims, **the result is the same even if § 1988(a) does not formally apply.** The Court thus concludes that, as long as it does not conflict with the Constitution and federal

2

law, the Tenth Circuit incorporates the applicable state law to determine whether the Rehabilitation Act claim survives the claimant's death.

*Id*. at 1241 (emphasis added). The Seventh Circuit in *Hutchinson v. Spink*, 126 F.3d 895 (7th Cir. 1997), reached the same conclusion, holding that "whether by incorporation through federal common law or more directly (a question we need not resolve here), state law governs the survival of statutory civil rights actions like the ADA claim[.]" *Id*. at 898 (*citing Slade*, 952 F.2d at 360; *Kilgo*, 789 F.2d at 875-76).

The Estate's proposed rule, that "remedial claims survive and penal claims abate," without regard to application of state law, seems simplistic and easy to apply. But as the Sixth Circuit observed in *Haggard v. Stevens*, 683 F.3d 714 (6th Cir. 2012), a case addressing the survivability of a *Bivens* claim, the Supreme Court has never created a bright-line rule that requires courts to ignore state law where § 1988(a) is inapplicable. As the *Haggard* court stated, "[If] that is what the [Supreme Court] meant in [*Carlson v. Green,* 446 U.S. 14 (1980)]—that the claims always survive—they presumably would have said as much, rather than have us chase chickens round the barnyard so long as we never catch any." *Id*. at 716. Indeed, "if the federal common law required survival of *Bivens* claims as remedial causes of action, then the Supreme Court could have saved itself a lot of analysis in *Carlson* simply by citing that rule. Yet the Court never mentioned it. **The Court also predicted that, in some instances, state law would control survivorship questions—which would be untrue if the federal common-law rule always governed them**." *Id*. (emphasis added). Based on its reading of Supreme Court precedent, the *Haggard* court looked to state law to fill the gap, noting that "the Supreme Court itself has suggested that we look to state law to answer survivorship questions in cases where the defendant's actions do not result in the plaintiff's death." *Id*. Applying state law, the plaintiff's *Bivens* claim did not survive. *Id*. at 717-18.

3

As stated in Griffin's original brief, "the Supreme Court has put increasing emphasis on the notion that when determining what should be the content of federal common law, the law of the forum state should be adopted absent some good reason to displace it." 19 Charles A. Write, Arthur R. Miller, Edward H. Cooper, *Fed. Practice and Procedure: Jurisdiction* § 4518, at 752-73 (2d ed. 1996) (*cited with approval by Nordwall*, 960 F. Supp. 2d at 1240).  "Thus, in *Kamen v. Kemper Financial Services, Inc.*, the Supreme Court of the United States held that, "in general, 'federal courts should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs.'" *Nordwall*, 960 F.Supp. at 1240-41 (*quoting Kamen*, 500 U.S. 90, 98 (1991)).  Federal law recognizes this principal in the context of statutes of limitations, applying state-created limitations periods to ADA claims despite no statutory requirement that it do so.  *See Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000) ("When a federal law has no statute of limitations, courts may borrow the most closely analogous state statute of limitations, unless doing so would frustrate the policy embodied in the federal law."); *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054 (8th Cir. 2003) (applying Nebraska's six-year statute of limitations to plaintiff's ADA claim); *see also*, *Haggard*, 683 F.3d at 717 ("This court already applies state law to decide another issue within the same genus as the one presented here—namely, how long *Bivens* claims survive after accrual.  We see no reason to treat the issue here any differently.").

Applying modern federal common law here, whether because § 1988(a) counsel's courts to do so or otherwise, this Court should look to the Arkansas survival statute to determine whether the Estate's ADA claim survives Mr. Guenther's death.  *Nordwall*, 960 F. Supp. 2d 1200.

4

4814-3853-5211.1

**B.      Neither the ADA nor the ACRA claims survive under Arkansas law.**

"Statutes allowing the survival of actions were intended to modify the traditional rule that an injured party's claim was extinguished upon the death of either party." *Parkerson v. Carrouth*, 782 F.2d 1449, 1451 (8th Cir. 1986) (*citing Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). "Because the survival action, just as a wrongful-death action, is a creation of statute, it only exists in the manner and form prescribed by the statute." *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead Cty., W. Div.*, 348 Ark. 197, 204, 73 S.W.3d 584, 588 (2002). "It is in derogation of the common law and must be strictly construed, and nothing may be taken as intended that is not clearly expressed." *Id*.

Arkansas's survival statute, Ark. Code Ann. § 16-62-101(a), is plain and has been interpreted narrowly. "The language of the statute includes every action, the substantial character of which is *bodily injury*, or damage of a *physical character*, but does not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution." *Ward v. Blackwood*, 41 Ark. 295, 298 (1883) (emphasis added); *see also Ark. Life Ins. Co. v. Am. Nat. Life Ins. Co.*, 110 Ark. 130, 137, 161 S.W. 136, 138 (1913) ("The statute means injuries of a physical character to actual, visible, and tangible property, and not to property rights or interests which in their nature are invisible and intangible."); *Parkerson v. Carrouth*, 782 F.2d 1449, 1452 (8th Cir. 1986) (§ 1983 civil rights action did not survive because plaintiff sought recovery for "property rights or interests which in their nature are invisible and intangible" and which affect "only the feelings or reputation"); *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, at *5-8, 423 S.W.3d 548, 551-53 (2012) (claim for invasion of privacy did not survive because claim did not seek recovery for "bodily injury" or "damage of a physical character.").

4814-3853-5211.1

Facing the application of this statute, the Estate argues (1) the ADA and ACRA claims represent hybrid tort/contract claims, and thus the Arkansas tort survival statute is not applicable; (2) emotional distress *is* a physical injury, thus allowing the claim to survive under the Arkansas Supreme Court's interpretation of the survival statute; and (3) a provision of the Arkansas Probate Code, Ark. Code Ann. § 28-49-104(a), offers an alternative to the survival statute that permits the Estate to resolve all legal matters on behalf of the decedent. *Id.* Each of these arguments lacks merit.

### 1.     *Discrimination claims are tort claims subject to the Arkansas survival statute.*

The Eighth Circuit has explicitly ruled that discrimination claims sound in tort, not contract. *Gaona*, 324 F.3d at 1054-56 (applying state statute of limitations applicable to tort claims to ADA claim). The Estate recognizes as much, conceding that "courts frequently liken the remedies for discrimination claims to personal injury claims, and then apply statutes directed at personal injury claims in the discrimination context." (Doc. 16 at 9). Indeed, "most Courts of Appeal, with the exception of the Fourth Circuit, have applied the state statute of limitations for personal injury actions to claims under the Rehabilitation Act and the ADA." *Id.* at 1055.

Following Eighth Circuit precedent, this Court should consider the Estate's ADA claim one for tort and apply the Arkansas's tort survival statute, Ark. Code Ann. § 16-62-101(a), to the Estate's claims. Because Arkansas law "analyze[s] a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]," *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, n. 1 (8th Cir. 2007) (bracketed language in original) (*quoting Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)), the Court should likewise apply Arkansas's tort survival statute to the Estate's ACRA claim.

4814-3853-5211.1

### 2.    *Claims premised entirely on emotional distress or anxiety do not survive*.

As Griffin correctly stated in its opening brief, the Estate is not seeking compensation for "bodily injury, or damage of a physical character," as required for a tort claim to survive under Arkansas law.  *See Ward*, 41 Ark. at 298; *Ark. Life Ins. Co.*, 110 Ark. at 137, 161 S.W. at 138. In response, the Estate argues that the "more logical position is that 'physical injury' encompasses emotional distress and anxiety," and thus, the Estate's claims do survive.  (Doc. 16 at 8).  The Estate has failed to cite any authority for this position.  And rightly so.  The language of the survival statute is plain and requires a physical, bodily injury for a plaintiff's claim to survive.  *Ward*, 41 Ark. at 298 (1883); *Ark. Life Ins. Co.*, 110 Ark. at 137, 161 S.W. at 138.  This was precisely the Arkansas Supreme Court's interpretation in *Ward*, *Arkansas Life*, and *Cannady*,[1] and the Eighth Circuit's interpretation in *Parkerson*.

*Parkerson* is particularly instructive here.   *Id*., 782 F.2d 1449.   There, the original plaintiff, Dr. Parkerson, initiated an action against the defendant for civil rights violations, alleging claims for libel, slander, malicious prosecution, and intentional injury to his medical practice.  He sought damages for his "alleged monetary loss **and for the anxiety and mental anguish [he] allegedly suffered**."  *Id*. at 1450.  Dr. Parkerson died before trial.  His wife continued the action as the executrix of his estate.  The trial court dismissed the estate's claims,

---

[1] The Estate attempts to distinguish *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548 (2012), by claiming that there the estate sought to recover for anguish suffered by the surviving family members, not the anguish of the decedent.  This is not correct. The estate in *Cannady* pressed two claims—(1) intrusion on the privacy of the decedent, which allows recovery for the decedent's mental anguish and embarrassment as an element of damages, *AAA T.V. & Stereo Rentals, Inc.*, 284 Ark. 83, 679 S.W.2d 190 (1984), and (2) outrage, which included the family members' mental anguish as an element of damages.  2012 Ark. 369, 423 S.W.3d 548.  Despite the availability of damages for the decedent's mental anguish for invasion of privacy, the court concluded that the claim did not survive because the decedent had not suffered a physical injury as a result of the defendants' actions.  *Id*.  As for the outrage claim, court reversed and remanded for other reasons.

finding that they did not survive under the Arkansas survival statute.  The estate appealed, and the Eight Circuit affirmed.  In reaching its conclusion, the Eighth Circuit cited with approval the Arkansas Supreme Court's decisions in *Ward* and *Arkansas Life*, which limited application of the survival statute to actions involving "*bodily injury*, or damage of a *physical* character, but [did] not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution."  *Id*. at 1452 (*citing Ward*, 41 Ark. at 298) (emphasis in original).  Applying this precedent, the estate's attempt to recover "for the anxiety and mental anguish [Dr. Parkerson] allegedly suffered" was not enough.  *Id*. at 1452-53.  Because the decedent had not suffered a bodily injury or damage of a physical character, the claim did not survive.  *Id*.

As in *Parkerson*, the Estate in this case seeks to recover for Mr. Guenther's alleged anxiety and emotional distress.  However, absent a physical, bodily injury, which is not alleged in this case, claims for anxiety and emotional distress are not enough to keep the Estate's claims moving forward.  *See Ward*, 41 Ark. at 298; *Ark. Life Ins. Co.*, 110 Ark. at 137, 161 S.W. at 138; *Cannady*, 2012 Ark. 369, 423 S.W.3d 548; *Parkerson*, 782 F.2d 1449; *see also, e.g., Walters v. Cowpet Bay W. Condo. Ass'n,* No. CV 2012-24, 2014 WL 7466620, at *7 (D.V.I. Jan. 2, 2014) (unpublished) (holding that survival statute requiring physical injury did not apply to civil rights claim alleging "emotional distress, embarrassment, and humiliation").  The Estate's arguments to the contrary are without merit.

> ### 3.     *The Arkansas Probate Code does not offer an alternative survival statute.*

Finally, the Estate asserts that the Arkansas Probate Code permits the Estate to proceed despite the existence and application of the Arkansas survival statute.  The Arkansas Probate Code, however, has no work to do here.  The provision cited, Ark. Code Ann. § 28-49-104(a),

merely grants the personal representative of an estate the power to resolve legal matters on

behalf of the estate.  The statute reads:

> When it appears to be for the best interest of the estate, or in the case of an action for wrongful death, for the best interest of the estate or widow and next of kin, the personal representative, upon the authorization of or approval by the court, may effect a compromise settlement of any claim, debt, or obligation due or owing to the estate, whether arising in contract or tort, or he or she may extend, renew, or in any manner modify the terms of any obligation owing to the estate.

Ark. Code Ann. § 28-49-104(a).  No state or federal court has interpreted this statute as

overriding or controlling the question of survival.  And in fact, the cited provision makes no

mention of survival whatsoever.  Instead, courts look exclusively to Ark. Code Ann. § 16-62-

101, aptly titled, "Survival of actions—Wrongs to person or property," to resolve the

survivability question with respect to torts.  Certainly, if the Estate presented a claim alleging

bodily injury that survived Mr. Guenther's death, Ark. Code Ann. § 28-49-104(a) would give the

personal representative of the Estate the power to resolve that claim.  However, the Estate's

reliance on Ark. Code Ann. § 28-49-104(a) as a means to preserve a cliam that has abated is

misplaced.

**C.      In the alternative, if the Estate's ADA claim survives Mr. Guenther's death, the Estate may not recover punitive or liquidated damages.**

The Estate does not address, and thus concedes, that should the Court allow the Estate's

ADA claim to proceed, it should limit the Estate's recovery to compensatory damages only and

dismiss all claims for liquidated or punitive damages.  *See e.g., Hanson,* 2003 WL 430484, at *4;

*see also Kettner,* 570 F. Supp. 2d 1121 (declining to apply state survival statute to ADA claim

but limiting plaintiff's recovery to non-penal, compensatory damages).  Thus, regardless of the

application of the Arkansas survival statute, the categories of damages available to the Estate

should be curtailed.

## II.  Conclusion

This Court should look to Arkansas's survival statute when deciding whether the Estate's ADA and ACRA claims survive Mr. Guenther's death.  Under Arkansas law, the Estate's ADA and ACRA claims do not survive and should be dismissed.  As such, the Estate's claims should be dismissed with prejudice.

Respectfully Submitted,

KUTAK ROCK LLP


/s/ Scott Jackson
Scott Jackson (AR Bar No. 2008195)
Samantha B. Leflar (AR Bar No. 2010190)
**KUTAK ROCK LLP**
234 East Millsap Road, Suite 200
Fayetteville, AR 72703-4099
Phone: 479.973.4200
Fax: 479.973.0007
Scott.Jackson@KutakRock.com
Samantha.Leflar@KutakRock.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, and will send notification of such filing to the following:

George M. Rozzell IV
Jenna Reed Fogleman
224 S. 2nd St.
Rogers, AR 72756
grozzell@arkattorneys.com

this 16th day of November 2015.

/s/ Scott Jackson
Scott Jackson
